Bourland et al v. Wittich.

BOURLAND, ET AL. V. WITTICH. *of Williams on Executors pp 1319, 1321*

1. MORTGAGES: *Satisfaction; Equities; Parties.*

Buchanan, as administrator of the estate of Davis, loaned Bourland money of the estate, and took his note for it, secured by mortgage upon different town lots in Ozark. Afterwards Bourland mortgaged one of the lots to secure other debts, and it was sold to satisfy this mortgage, and purchased by Wittich. About this time Buchanan settled up the estate of Davis, and by decree of the probate court delivered to Bourland, as guardian of the distributees of Davis' estate, his note and mortgage. In a bill in equity by Wittich against Buchanan and Bourland, claiming that the delivery of the notes and mortgage to Bourland discharged them, and praying that his title be quieted against them, or that the other lots be first sold to pay them; *Held:* 1. That this transaction did not extinguish the note and mortgage; 2, but the other lots should be first subjected to the satisfaction of the mortgage; 3, that the distributees (Bourland's wards,) were necessary parties to the suit.

APPEAL from *Franklin* Circuit Court in Chancery.

HON. W. D. JACOWAY, Judge of Circuit Court.

*U. M. Rose* for appellant.

1. When the legal and equitable titles became united in Bourland, that did not operate as a merger, or extinguishment of the debt; he held the mortgage as guardian, and the equity of redemption in his own right. 2 *Black. Com.*, 177; 4 *Kent Com.*, 102; *Bouv. Inst.*, sec. 1995; 2 *Broom*

& *Had. Com.*, 329 ; *Jones* v. *Davis*, 5 *Hudstone & N.*, 766.   Affirmed in 7 *Ib.*, 507.

2.   If the release of block 35 was fraudulent as to cred-tors they alone could take advantage of it, and in the pres-ent suit the matter cannot be enquired into.  *Bump on Fraud. Con.*, 2 *Ed.*, 451 ; *Clute* v. *Fitch*, 25 *Barb.*, 428 ; *Bessey* v. *Windham*, *C. A. & E.*, (*N. S.*) 166 ; *Bigelow on Fraud*, 346.

3.   The final settlement of Buchanan, as administrator, could not extinguish the note to him in that capacity.   The debts of the estate having been paid, the note would pass as assets to the guardian.   *Gantt's Dig.*, sec. 165 ; *Hester* v. *Hester*, 3 *Iredell Eq.*, 9.

*J. V. Bourland* also for appellant.

Makes the same points as his co-counsel, and cites *Kent on Real Estate, p.* 101 ; *Marr & Lewis*, 31 *Ark.*, 203.

*Wittich, Hughes* and *C. B. Moore* for appellees.

The lien of the mortgage was extinguished by the final settlement of Buchanan as administrator, and appellee hav-ing purchased after the lien was so extinguished, there was no lien on the land at the time of the sale to appellee.

The assignment of the property in 1874, subject to the mortgage lien, and his subsequent receiving from the administrator his note and mortgage, is evidence of fraud, and appellee is estopped from setting it up.

There is no evidence of any assignment ; of any intention on the part of the administrator to keep alive ; no transfer of the mortgage, so as to keep it alive as a lien ; but only a naked delivery.

The transfer to Bourland extinguished the debt, and his

Bourland et al v. Wittich.

sureties on his guardian's bond became liable, and the wards must look to them.

EAKIN, J. On the eighth of January, 1868, Ebenezer Bourland obtained $5000 in money from Thomas Buchanan, as administrator of the estate of J. M. Davis. He gave his note, secured by a mortgage upon three separate pieces of town property in Ozark, described as follows : *Lot No. 3, in block No. 5 ; all block* 35, and *lot No.* 11, *in block No.* 20.

In the month of April, 1869, the wife of said mortgagor, being entitled to dower from the estate of Davis amounting to $1666.66, allowed that sum to be credited on her husband's note. Another payment appears to have been made about March, 1875, of $2580.70. There were also some rents collected for the mortgagee, amounting, net, to something over $300. The note does not appear to be entitled to any other credits.

About August, 1874, Bourland made for the benefit of certain creditors, an assignment to Sutherland of the greater portion of his personal and real property. He included in it "two-thirds of *lot No.* 11, *in block* 20, being "twenty feet off of the East side of said lot, and on which the store house of the said Ebenezer and D. L. Bourland is situate," "subject to the lien of Thomas Buchanan as administrator, &c., on the same." Lot 3, in block 5, was also included, but not block 35. D. L. Bourland joined in the deed.

At the trustee's sale, under the power given in the assignment, Wittich purchased said two-thirds of lot eleven, paid the proportion of cash required, gave notes for the balance, and received a title bond. This was on the twenty-second of December, 1875, About that time the administration of

21–38

Buchanan was closed. He made his final settlement show-
ing balance in his control, due upon the note, of something
over $1300, which he was ordered to turn over to Bourland
as guardian of Davis' heirs. This he did by simply deliver-
ing up to him the note and mortgage.

Afterwards Wittich filed this bill, setting up the forego-
ing facts, and making Buchanan and Bourland defendants.
He alleges that they keep him out of possession of his pur-
chase, under the pretense that the mortgage lien exists,
whereas, as he says, it has been fully paid ; that Buchanan
had promised him that he would bring an action and have
the mortgage foreclosed, but failed to do so. He says if
anything be still due, it is amply secured by block 35, which
was included in the mortgage.

The prayer is, that, if anything be due Buchanan, he be
compelled first to exhaust block 35, before selling complain-
ant's lot, and that, when the mortgage may be satisfied, his
title be declared unclouded.

Bourland answers for both, denying that the mortgage
has been satisfied. He says that when it was agreed that
his wife should allow her dower to be credited on the note,
Buchanan agreed to and did release said lot No. 35 from the
mortgage. He acknowledges rents, &c., received. Bour-
land makes his deposition also, in which he testifies posi-
tively as to the release, which he says was by parol and let-
ter, but that the letter has been lost or mislaid. Buchanan
testifies to other facts substantially as set forth above, but
denies that he ever made, or agreed to make, a release of
any part of the property. It will be observed hereafter
that his honor, the Chancellor, did not consider the proof
upon this point important. It further appears throughout
that the whole management of the business of Davis' estate
was pretty much left to the hands of Bourland, who acted
for Buchanan as his agent. The latter denies, indeed, that

any money was paid to him at all, upon the mortgage, or that he ever assumed any control of the mortgaged property.

Upon the hearing the Chancellor, amongst other things, found that the administration of Buchanan on the estate of Davis had been concluded; that the estate had been fully settled, and that the lien upon said lot, created by the mortgage, had been extinguished, together with the debt; whereupon the title to the property was decreed free of all incumbrance to the complainant. The defendants appealed.

The decision of the court below seems to have turned upon the opinion of the Chancellor to the effect that the transfer of the note and mortgage to Ebenezer Bourland, at the close of the administration of Buchanan, extinguished it, inasmuch as it was his own obligation; and that, too, notwithstanding that he took it only as guardian of the *heirs*, as they are called, but really the *distributees* of Davis' estate, of whom he was guardian. It seems to have been thought that, as he could not sue himself, all right of action on the note and mortgage was gone, and the property released; and that he became, thereby, liable to his wards for the amount due, for which his sureties on his bond would take the place of the mortgaged property.

Courts of Chancery have, from the beginning, interfered to prevent the failure of justice from too strict an application of legal rules. Hence they frequently keep alive judgments and debts, which, by strict rules of law, would be considered as satisfied and extinguished. Generally this is done to subserve the purposes of subrogation; but the principal is broad enough to apply to all cases where a merger of rights would work injustice. In the present case, to consider the mortgage as extinguished would not only deprive the wards of a security upon real estate to which they are justly entitled, in addition to the personal security of the

Bourland et al v. Witiich.

guardian's bondsmen, but it would deprive the sureties of the guardian of the means of subrogation to the real estate lien, in case they should be compelled to answer for their principal for any defalcation, as to funds, with which he may be chargeable.   In this case the note and mortgage were not taken by Bourland in his own name or for his own benefit. He gave no consideration for them.   They passed into his hands—not in his individual, but his fiduciary capacity. They lost none of their virtue or efficacy by their transfer from the administrator, and remained as formerly obligations which bound the guardian, personally, and made a specific lien on his realty.

A court of Chancery would not permit a guardian to take in his own mortgages in his fiduciary character, and by charging himself with the proper amounts, at the risk of his sureties, thus obtain a release of liens upon his own property.   This would be dealing with the funds for his own benefit.   He might dispose of his liberated property, and thus trifle with the rights of both sureties and wards. There can be no reason in saying that equity will give an effect to an act which it would not have permitted the parties concerned to give by direct intention.

Parties in foreclosure of mortgage.   No difficulty can arise in a court of Chancery concerning parties.   Any person interested may come in, and upon a showing of the facts insist upon a foreclosure of the mortgage.   The appellee had that right upon his own account, but we think the court erred in declaring the mortgage satisfied, and decreeing a clear title in his favor.   His right was to have an account of what might be due on the mortgage, and to have any property sold for its payment, which might be found liable before his own.   Before this can be done, however, the wards must be brought in and made parties. The account must be for their benefit, and not that of the

guardian, and they must have a special guardian *ad litem*, as their interests are antagonistic to his; whilst he must remain a party in his own right. *Gantt's Dig., sec.* 4493.

By the disclaimer of all further interests in the subject matter by the administrator, and from knowledge, brought to the court of the interest of the wards, it is plain that no final determination can be made of the questions between Wittich and Bourland without danger of prejudice to the rights of the wards, nor can their rights well be saved without leaving the questions open for readjustment between the original parties. The court must order them to be brought in. *Gantt's Dig., sec.* 448.

With regard to the release, the proof fails. The testimony of Bourland on that point, although positive in assertion, fails to show clearly any valid release before the execution of the assignment to Sutherland. He does not prove clearly that it was made at the time of the credit of his wife's dower interest and in consideration of her agreement to receive her dower in that way. If made afterwards, voluntarily by the administrator, it would be such a transaction as a court of Chancery ought not to tolerate, as it would, whether so intended or not, indicate collusion between the administrator and Bourland to destroy the securities of the estate for the benefit of the latter, thus endangering the sureties of the administrator directly, and the estate itself indirectly, if said sureties should prove insolvent. It is the duty of the administrator not only to preserve but carefully nurse all the securities under his control. Besides the administrator positively denies that he ever made such a release. Block No. 35 is still subject to the mortgage, so far as appears from the present transcript, but it would be premature to decree so decisively until the wards are brought in.

For this reason we forbear, also, at present all discussion as to the order or proportions in which the several parcels of property are to bear the burden of the mortgage.

Reverse the decree, and remand the cause, with directions to the court below to cause the wards of Bourland, entitled to the funds, to be brought in as parties, and to appoint a suitable special guardian for the protection of their interests in this suit, and for further proceedings, to be had in conformity with this opinion, and the principles and practice in equity.